**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

SIR JULES MURRAY,

                           Plaintiff,

                                                     No. 9:14-CV-1094
                                                   (BKS/CFH)

ALBERT PRACK, Director of Special
Housing/Inmate Discipline; JOHN MILLER,
Acting Captain, Clinton Correctional
Facility,

                           Defendants
_____

**APPEARANCES:**                          **OF COUNSEL:**

Sir Jules Murray
Plaintiff <u>pro</u> <u>se</u>
10-R-2000
Upstate Correctional Facility
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN        KEITH J. STARLIN, ESQ
Attorney General for the State of New York   Assistant Attorney General
Attorneys for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff <u>pro</u> <u>se</u> Sir Jules Murray ("Murray"), an inmate currently in the custody of the

New York State Department of Corrections and Community Supervision ("DOCCS"), brings

this action pursuant to 42 U.S.C. § 1983 alleging that defendants Albert Prack and John

---

    [1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to
28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

Miller violated his rights under the Fourteenth Amendment. Dkt. No. 1 ("Compl.") at 7. Presently pending is defendants' motion for summary judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56. Dkt. No. 22-14. Murray did not oppose this motion, despite being notified of the response deadline. <u>See</u> Dkt. No. 23. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

At the times relevant in this complaint, plaintiff was incarcerated at Clinton Correctional Facility ("Clinton CF"). <u>See</u> <u>generally</u> Compl.

## A. Undisputed Facts

On August 19, 2011, Murray attended a sanctioned Nation of Islam ("NOI") service at Clinton CF. Compl. at 10. This service was audiotaped by Clinton CF. Dkt. No. 22-1 at 9. During this service, Murray spoke to the group of NOI inmates, addressing alleged incidents of Clinton CF officers assaulting NOI inmates during Ramadan. <u>See</u> Dkt. No. 22-10 at 12-16. Corrections officer Phaneuf listened to the audio recording of Murray's speech, and concluded that Murray's comments violated several DOCCS inmates rules and were a direct threat to safety and security at Clinton CF. Dkt. No. 22-1 at 2; Dkt. 22-6. Thus, Phaneuf prepared an inmate misbehavior report on August 23, 2011, charging Murray with violating the following DOCSS Inmate Rules:

> **104.10** Inmate shall not conspire or take any action which is intended to or results in the takeover of any area of the facility;
>
> **104.11** Inmate shall not engage in any violent conduct or conduct involving threat of violence either individually or in a

group; and

**104.12** Inmate shall not lead, organize, participate, or urge other inmates to participate in work-stoppages, sit-ins, lock-ins, or other action which may be detrimental to the order of the facility.

Dkt. No. 22-6; Dkt. No. 22-13.

Phaneuf cited several of Murray's statements that he believed constituted chargeable violations. Dkt. No. 22-6. Such statements include: Murray's assertions that Clinton CF corrections officers were writing NOI inmates up for partaking in Ramadan observance; Murray would not write a grievance; Murray was in prison for thirteen years for assaulting corrections officers at a county corrections facility; and Murray's statement that, if the NOI inmates remained in large groups, the corrections officers at Clinton would not attack them. See id. The misbehavior report identified Murray as the speaker based on his age, crime, sentence, nickname, and Murray's self-identification as the speaker in an interview with DOCCS personnel on August 22, 2011. Id. Phaneuf reported the time of the incident as approximately 7:30 P.M. on August 19, 2011. Id. Murray was served with a copy of the misbehavior report on August 24, 2011 at 8:23 A.M. Dkt. No. 22-9. Murray was also provided with an assistance selection form. Dkt. No. 22-7. Murray waived his right to select an assistant and signed and dated this document. Id.

Murray's Tier III disciplinary hearing began on August 26, 2011. Dkt. No. 22-10 at 1. Defendant Miller presided as hearing officer. Id. Miller advised Murray of his right to call witnesses and to present documentary evidence. Id. Murray called inmates Rodriguez and Fulton as witnesses. Id. at 4, 8. Inmate Rodriguez testified that he had left the August 19, 2011 NOI service at approximately 7:00 P.M. to go to his job at the mess hall. Id. at 5. After

Rodriguez's testimony, Murray testified that he spoke at the NOI meeting at approximately 6:50 or 7:00 P.M. that night. Id. at 7. Next, inmate Fulton testified that he received the same misbehavior report as Murray as a result of his statements at the August 19, 2011 NOI meeting. Id. at 10. Both witnesses testified that Murray did not advocate violence at the NOI meeting. Id. at 5, 9.

At Murray's request, the hearing officer played the taped audio recording of Murray's speech at the August 19, 2011 NOI service. Dkt. No. 22-10 at 12-16. The audio recordings convey Murray's speech to the NOI inmates, wherein he stated that fellow Islamic inmates had been assaulted by Clinton CF officers for their observance of Ramadan. Dkt. No. 22-10 at 12-14. According to the transcript of the hearing, at the NOI meeting, Murray repeatedly asked the NOI crowd "what are we going to do about it?" Dkt. No. 22-10 at 12-14. At one point, Murray told the crowd that he was "not going to write a grievance cause that's all through this facility." Dkt. No. 22-10 at 13. Further, Murray indicated that "anything's going to set me off" if he "fe[lt] some type of rage," and went on to share that he was serving time for beating up corrections officers at a county correctional facility. Id. at 12, 14. Murray also commented that, in the eight hours following the alleged assault on an NOI inmate, no one had "set up a watch[,]" and suggested that corrections officers would not "attack" if the NOI inmates remained in a large group. Id. at 12, 14. Murray proposed that NOI inmates should start a "paper trail," suggesting that corrections officers had their own "paper trail." Dkt. No. 22-10 at 13, 14.

Speaking hypothetically, Murray asked the NOI inmates what they would do if Louis Farrakhan were assaulted, and proposed that the inmates would have done something

-4-

whether the reaction were "right or wrong." Dkt. No. 22-10 at 14. He further asserted that the NOI inmates would have taken action faster than they had in response to the alleged attacks on the NOI inmates at Clinton CF, but that there was essentially no difference between Farrakhan and any other Muslim, and that the alleged assaults on NOI inmates were what the NOI at Clinton "need[ed] to unite." Id. Murray indicated that he "can't do nothing, I'm only one." Id. at 16.

After listening to the audiotape, Miller made a written superintendent hearing disposition which he read into the record. Dkt. No. 22-10 at 16-17; Dkt. No. 22-12. Miller found Murray not guilty of rioting and guilty of violent conduct and demonstration. Id. at 16. Miller relied upon the following evidence in reaching this disposition: "written report charging inmate with attempting to incite other inmate to participate in actions intended to disrupt the facility and implied actions of violence. Review of the audio recording made inmate statements support the charges filed." Dkt. No. 22-12 at 2; Dkt. No. 22-10 at 16. Miller also indicated that his disposition was imposed in order "[t]o deter any behavior by this and other inmates that would encourage others to participate in activities detrimental to the safety and security of [Clinton CF] and its staff." Dkt. No. 22-12 at 2, Dkt. No. 22-10 at 16-17.

A written copy of this hearing disposition was issued to, and signed by, Murray on September 6, 2011 at 4:10 P.M. Dkt. No. 22-12 at 2. Miller advised Murray of his right to appeal. Dkt. No. 22-10 at 17. Murray appealed the disciplinary hearing determination. Compl. at 4-5 (Dkt. No. 1). In a decision dated November 9, 2011, defendant Prack affirmed. Compl. at 5; Dkt. No. 22-1 at 10.

Murray moved pursuant to CPLR article 78 for appellate review of the disciplinary

hearing determination.  See Matter of Murray v. Fischer, 104 A.D.3d 1007, 1008 (N.Y. App. Div. 2013).  In an Order dated March 14, 2014, the Supreme Court, Appellate Division, Third Department annulled the disciplinary hearing determination, concluding that the determination was not supported by substantial evidence.  Id. at 1008-1009.

## II. Discussion[2]

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, if supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor

---

[2] Unpublished decisions cited to within this Report-Recommendation and Order will be provided to plaintiff.

of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

## B. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV § 1. It is important to emphasize that due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of law." Barker v. McCollan, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted). "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). An inmate retains a protected liberty interest in remaining free from segregated confinement if the prisoner can satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

## 1. Liberty Interest

To state a claim for procedural due process, there must first be a liberty interest which requires protection. See generally Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994) ("[Procedural] due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's [segregated] confinement . . . relative to the conditions of the general prison population []" are to be considered. Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998) (citations omitted). This

standard requires a prisoner to establish that the confinement or condition was "atypical and significant" in relation to "ordinary incidents of prison life."  See Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999) (quoting Sandin, 515 U.S. at 484; Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

Although not dispositive, the duration of a disciplinary confinement is a significant factor in determining atypicality.  Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted).  The Second Circuit has not established "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights."  Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (citations omitted).  Instead, the Second Circuit has provided guidelines: "[w]here the plaintiff was confined for an intermediate duration – between 101 and 305 days – 'development of a detailed record' of the conditions of confinement relative to ordinary prison conditions is required."  Id. at 64-65 (quoting Colon, 215 F.3d at 232).  In the absence of a dispute about the conditions of confinement, summary judgment may be issued "as a matter of law."  Id. at 65 (citations omitted).  Conversely, where an inmate is confined under "normal SHU conditions" for a duration in excess of an intermediate disposition, the length of the confinement itself is sufficient to establish atypicality.  Id. (citing Colon, 215 F.3d at 231-32).  Also, "[i]n the absence of a detailed factual record, cases in this Circuit typically affirm dismissal of due process claims where the period of time spent in SHU was short – e.g., 30 days – and there was no indication [of] . . . . unusual . . . conditions."  Harvey v. Harder, No. 09-CV-154 (TJM/ATB), 2012 WL 4093792, at *6 (N.D.N.Y. July 31, 2012) (citing inter alia Palmer, 364 F.3d at 65-66).

Here, Murray served five hundred and eighty-seven days in SHU as a result of the

Tier III disciplinary hearing, which is in excess of a confinement of "intermediate duration." Colon, 215 F.3d at 232; Compl. at ¶ 45. Therefore, based on the length of confinement alone, it is undisputed that Murray experienced atypical and significant confinement sufficient to establish a protected liberty interest. Palmer, 364 F.3d at 64-65 (citing Colon, 215 F.3d at 231-32); see also Harding v. Venettozi, No. 9:13-CV-1162 (MAD/CFH), 2015 WL 339581, at *12 (N.D.N.Y. Jan. 26, 2015) (holding that an inmate's sentence of three hundred and sixty-five days in SHU was sufficient to establish atypicality and a protected liberty interest).

### 2. Procedural Due Process

Although inmates are not afforded the "full panoply of [due process] rights," they are still entitled to procedural due process. Wolff v. McDonald, 418 U.S. 539, 556 (1974). A prisoner is entitled to "advanced written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written disposition including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citing Wolff, 418 U.S. at 563-67). Inmates are additionally entitled to the opportunity to obtain the aid of a hearing assistant. See Eng v. Couglin, 858 F.3d 899, 897 (2d Cir. 1988).

### a. Advanced Written Notice

An inmate must be provided advanced written notice of the charges no later than

twenty-four hours before the commencement of a disciplinary hearing.  <u>Wolff</u>, 418 U.S. at 564.  Notice must be in writing "in order to inform [the inmate] of the charges and enable him to marshal the facts and prepare a defense."  <u>Id.</u>

Here, Murray does not dispute that he received advanced written notice of the charges against him more than twenty four hours before his Tier III disciplinary hearing. Murray received notice of his formal charges on August 24, 2011 at 8:23 A.M., well in advance of his Tier III disciplinary hearing which took place on August 26, 2011 at 10:20 A.M.  Dkt No. 22-9; Dkt. No 22-10 at 1. Thus, Murray was provided with sufficient advanced written notice of the charges.  <u>Wolff</u>, 418 U.S. at 564.


### b.  Opportunity to Call Witnesses and Present Documentary Evidence

In prison disciplinary hearings, inmates are entitled to the opportunity to call witnesses and present documentary evidence in their defense when doing so is not "unduly hazardous to institutional safety or correctional goals."  <u>Wolff</u>, 418 U.S. at 566.

It is uncontested that Murray was afforded the opportunity to call witnesses and present documentary evidence.  Murray admitted in his deposition that he called two witnesses. Dkt. No. 22-3 at 35.  The hearing transcript reflects that Murray called inmates Rodriguez and Fulton as witnesses.  <u>See</u> Dkt. No. 22-10 at 4-6, 8-11.  Further, Murray was able to present evidence.  Murray's request to play portions of the audio recording from the August 19, 2011 NOI meeting was granted, and the portions of the meeting during which Murray spoke were played.  <u>See</u> Dkt. No. 22-10 at 12-16.  Thus, it is clear from the record that Murray was given the opportunity to call witnesses and present evidence in his defense

at his Tier III disciplinary hearing.

### c. Fair and Impartial Hearing Officer

Inmates have a constitutional right to a fair and impartial hearing officer. <u>Sira</u>, 380 F.3d at 69; <u>Wolff</u>, 418 U.S. at 570-71. However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required by judges generally. It is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." <u>Allen v. Cuomo</u>, 100 F.3d 253, 259 (2d Cir. 1996) (citations omitted). The Supreme Court of the United States held "that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] . . ." and the Second Circuit has held that the proper test to be applied is whether the hearing officer based his decision upon "'reliable evidence' of the inmate's guilt." <u>Superintendent, Mass. Corr. Inst. V. Hill</u>, 472 U.S. 445, 455 (1985); <u>Luna v. Pico</u>, 356 F.3d 481, 487-88 (2d Cir. 2004).

The "some reliable evidence" standard has been held satisfied where the disciplinary hearing officer based his decision upon the misbehavior report of a non-testifying corrections officer who had first-hand knowledge of the incident and there existed no evidence of motive on the part of the reporting corrections officer to falsely implicate the inmate being charged. <u>See</u> <u>Reed v. Terbush</u>, No. 9:10-CV-1449 (LEK/RFT), 2015 WL 3447743, at *5 (N.D.N.Y. May 28, 2015) (citing <u>Chreech v. Schoellkoph</u>, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010)). Additionally, where an inmate's witnesses were either not present at the time of the incident, or have a conflict

of interest because they had been charged with the same violations giving rise to the inmate's disciplinary hearing, the hearing officer may refuse to allow these witnesses to testify and may properly make his determination without such testimony.  See Harding, 2015 WL 339581, at *15.  Moreover, even if a prison hearing officer's decision is later annulled in state court through a CPLR article 78 proceeding wherein the court finds that the decision was not supported by "substantial evidence," an inmate's due process rights are not violated as long as the evidence relied upon by the prison hearing officer was not "blatantly implausible" or "hearsay accusations not independently assessed to be credible."  Washington v. Gonyea, 538 F. App'x 23, 25-26 (2d Cir. 2013) (summary order) (internal citations and quotations omitted).

     The record shows that defendant Miller did not base his determination upon "blatantly implausible" evidence or "hearsay accusations not independently assessed to be credible."  Washington, 538 F. App'x at 25-26 (internal citations and quotations omitted).  Rather, defendant Miller based his decision on two reliable sources of evidence.  First, Miller relied on the written incident report prepared by C.O. Phaneuf. Dkt. No. 22-12 at 2.  C.O. Phanuef listened to the audio recording of the August 19, 2011 NOI meeting and prepared the misbehavior report specifying certain of Murray's statements which Phaneuf believed violated DOCCS rules.  Reed, 2015 WL 3447743, at *5; Dkt. No. 22-6.  Additionally, Murray does not allege, and the record does not support, any motive on the part of C.O. Phanuef to falsely implicate Murray.  Reed, 2015 WL 3447743, at *5; Compl. at 3, 7.  Although C.O. Phaneuf did not testify at the hearing, there is no reason to question his reason in charging the violations in the misbehavior

report.  See Creech v. Schoellkoph, 688 F. Supp. 2d. 205, 214-15 (W.D.N.Y. 2010); see generally Dkt. No. 22-10.  Miller based his determination upon a misbehavior report composed by a corrections officer with first-hand knowledge of the alleged incident who was not alleged to have any motive to falsely implicate the plaintiff.  See Reed, 2015 WL 3447743, at *5; Dkt. No. 22-6; Compl. at 3, 7.  Therefore, C.O. Phanuef's misbehavior report, even absent his direct testimony, is reliable evidence on which Miller could base his determination.

Miller also based his determination on his own review of the audio recordings from the incident in question, played at the Tier III disciplinary hearing, in which Murray identified himself as the speaker and admitted to making the statements at issue.  Dkt. No. 22-10 at 12, 16; Dkt. No. 22-6.  A plaintiff's admission is held to be reliable evidence on which a hearing officer may properly base his determination in accordance with an inmate's due process rights.  See Shabazz v. Bezio, No. 9:10-CV-1212 (NAM/DEP), 2014 WL 4794432, at *13 (N.D.N.Y. Sept. 25, 2014) (holding that an inmates's admission of a rules violation at a disciplinary hearing is reliable evidence upon which a hearing officer's determination may be based).  By identifying himself as the speaker at each portion of the tapes as they were played, Murray admitted during the Tier III disciplinary hearing that he made many of the statements contained C.O. Phaneuf's misbehavior report.  See Shabazz, 2014 WL 4794432, at *13; Dkt. No. 22-10 at 12, 15. Further, the entirety of Murray's speech from the August 19, 2011 NOI meeting was played at the hearing.  See Dkt. No. 22-10 at 16.  Although Murray argues that his words were taken out of context, Miller heard Murray's entire speech, was able to compare it to

-14-

the allegations contained in the written misbehavior report, and made a determination based upon that complete evidence. Id.; Dkt. No. 22-12 at 2. As Miller based his determination on a review of Murray's full NOI speech, and Murray admitted to being the individual who was speaking on the audio recording of the speech played at his disciplinary hearing, Miller based his determination on reliable evidence. Accordingly, Miller did not violate Murray's due process rights. See Hill, 472 U.S. at 455; Luna, 356 F.3d at 487-88; Dkt. No. 22-10 at 16; Dkt. No. 22-12 at 2.

The fact that Murray called two witnesses who testified that Murray did not advocate violence or disruption to the facility does not require a contrary determination. Compl. at 3; Dkt. No. 22-10 at 4, 8. Where an inmate's requests to call two inmate-witnesses was denied because one had a conflict of interest for being an accessory to the same charged violation and the other witness was not present when the incident occurred, this Court held that such "inconsistent information is not helpful to appropriately determining the hearing" and that the hearing officer's ultimate determination may be properly made without such testimony. See Harding, 2015 WL 339581, at *15. Here, Miller allowed Murray to call both of his requested witnesses. Dkt. No. 22-10 at 4, 8. However, although inmate-witness Rodriguez indicated seeing some of Murray's speech, Rodriguez also testified that he had left for work before the time that the record indicates that Murray had given his speech at the August 19, 2011 NOI meeting and long before the meeting had ended. See Dkt. No. 22-10 at 5-7. Rodriguez further testified that he did not recall being present at the meeting when Murray suggested a solution to the NOI inmate-corrections officer issue. Id. at 6. Moreover, inmate Fulton had a conflict of

interest since he had been given the same misbehavior report for statements that he made during the same NOI meeting that gave rise to the charges against Murray.  Id. at 10.  Although Miller allowed these witnesses to testify, both of their testimony would be considered inconsistent and not credible, and, as such, Miller's determination based on the reliable evidence of the misbehavior report and audio recording was justified. Harding, 2015 WL 339581, at *15; Dkt. No. 22-10 at 4,8.

Even the most liberal reading of Murray's complaint reveals that plaintiff does not allege that either defendant lacked fairness or impartiality or used unreliable evidence in making his determination.  See generally Compl.  Rather, Murray suggests that, because the disciplinary charges were subsequently reversed by the Appellate Division, Third Department, a due process violation occurred for which Murray is entitled to relief.  See Matter of Murray v. Fischer, 104 A.D.3d 1007, 1007 (App. Div. 3rd Dept. 2013); Compl. at 1, 43-47.  However, as discussed at length above, because defendant Miller based his decision on "reliable evidence," the Appellate Division's subsequent annulment – using the heightened "substantial evidence"[3] standard – does not establish that Murray's due process rights were violated.  See Luna, 356 F.3d at 487-88; Washington, 538 F. App'x at 25-26; see discussion Part C supra.  The "New York State law standard for sufficiency of evidence is whether the hearing officer's determination is supported by 'substantial evidence.'  This stricter standard is not applicable to federal due process claims." Alexander v. Fischer,  No. 914-CV-548 (GLS/ATB), 2015 WL 10568892, at *6 (N.D.N.Y.

---

[3] "'Substantial evidence' means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact."  Bottom v. Annuci, 26 N.Y.3d 983, 984-85 (N.Y. 2015).

Dec. 21, 2015) (citation omitted).  A "subsequent modification of [a plaintiff's] determination during the administrative appeals process or in anticipation of a state court proceeding does not, by itself, resolve the question of whether a constitutional violation occurred."  Id. at *7 (citing Walker v. Bates, 23 F.3d 652, 657 (2d Cir. 1994)).

Further, Murray's statements, which Miller relied on to make his determination, clearly meet the level of "reliable evidence" as it is not "blatantly implausible" that such statements could lead to the rules violations for which Murray was found guilty. Washington, 538 F. App'x at 25-26.  Murray was found guilty of two DOCCS violations. Dkt. No. 22-12 at 1.  First, Murray was found guilty of 104.11 "Inmates shall not engage in any conduct *or conduct involving the threat of violence either individually or in a group*."  Id.  At the beginning of Murray's speech, he explained that a fellow inmate allegedly had been beaten by corrections officers, stated that the reason the officers beat the inmate did not matter, and indicated to the crowd that if he does not like you "anything's going to set [him] off.  If you look at [him] wrong it don't matter what you think . . . [j]ust that if you look at [him] wrong, it's possible."  Dkt. No. 22-10 at 12.   Murray went on to explain that he would be in prison for thirteen years for assaulting corrections officers in a county corrections facility, which at least arguably suggests to the crowd that he was willing to use violence against corrections officers.  Id. at 14.  Murray also stated that if the Clinton CF corrections officers had assaulted Louis Farrakhan, NOI inmates would have taken action faster than they had when the guards had allegedly assaulted NOI inmates.  Id.  He further stated that this type of action by the corrections officers was what NOI inmates needed to unite.  Id.

Based upon these statements, its plausible that Murray was engaging in conduct involving the threat of violence both individually and as NOI as a group. Indicating that he would be "set off" if someone "looked at him wrong" is suggestive of a violent reaction, especially given that this statement was made in response to corrections officers' alleged assault on NOI inmates. Dkt. No. 12-10 at 12. Charging a group of inmates with accusations that prison guards are committing violence against them and calling upon them to take fast action, as if the guards had assaulted Louis Farrakhan, is plausibly a call to his fellow inmates to retaliate violently against the prison guards. Thus, Miller's determination that Murray engaged in conduct involving the threat of violence was not "blatantly implausible," and was based on reliable evidence.

Murray was also found guilty of "leading, organizing or urging other inmates to engage in . . . *other action which may be detrimental to the order of the facility* in violation of 104.12." Dkt. No2. 22-12 at 1, 22-13 at 1. Based upon Murray's statements from the NOI meeting, this determination was not "blatantly implausible." Murray explicitly stated that he would not write a grievance; rather, Murray advocated that NOI inmates rectify the alleged issue by taking matters into their own hands by doing such things as "set up a watch" and staying in a "large group." Id. at 13-14. He also warned the crowd that the corrections officers were "going to do something" and told them that "the problem would be whitey." Id. at 14. He repeatedly asked the crowd "what are we going to do about it?" and asked them "[w]hat are you all going to do if they kill me?" Dkt. No. 22-10 at 12-15. Thus, it is plausible that Murray's statements rendered him in violation of 104.12, and Miller's determination was not in violation of Murray's due process rights.

Notably, Murray does not allege that defendant Prack was in any way unfair or impartial. See generally Compl. Murray's complaint offers no more than a bare recitation of the fact that defendant Prack and heard the appeal and affirmed defendant Miller's initial determination. Id. at 4-5. Thus, as the undersigned finds that Miller based his determination on "reliable evidence," Prack's affirmation of Miller's determination cannot be considered to be based on unreliable evidence and does not indicate any unfairness or partiality on his behalf.

Accordingly, as Murray was afforded fair and impartial hearing officers, who based their determinations upon reliable evidence, the fact that the determination was ultimately annulled following an article 78 proceeding at the state Appellate Division using a different evidentiary standard fails to demonstrate that Murray was deprived procedural due process.

### d. Written Statement of Disposition

Upon the conclusion of a prison disciplinary hearing, an inmate is entitled to receive a written statement of the hearing officer's disposition, which includes the evidence relied upon and the reasons for the disciplinary actions taken. Wolff, 418 U.S. at 563.

Miller rendered a written hearing disposition at the conclusion of Murray's Tier III disciplinary hearing, which was read into the record. Dkt. No. 22-10 at 16-17 ;Dkt. No. 22-12 at 1-2. The written hearing disposition included the evidence relied upon and the reasons for the discipline issued. Dkt. No. 22-10 at 16-17; Dkt. No. 22-12 at 2. Murray

received and signed a written copy of this hearing disposition on September 6, 2011 at the conclusion of his Tier III disciplinary hearing.  Dkt. No. 22-12 at 2.  Thus, Murray was provided with a sufficient written disposition in accordance with his procedural due process rights.  Wolff, 418 U.S. at 563; Hinton v. Prack, No. 9:12-CV-1844 (LEK/RFT), 2014 WL 4627120, at *6, 8 (N.D.N.Y. Sept. 11, 2014).

### e.  Opportunity to Obtain a Hearing Assistant

Inmates are entitled to the opportunity to receive the aid of a hearing assistant in preparing  their defense in a disciplinary hearing.  See Eng, 585 F.3d at 987.  It is undisputed that Murray was afforded the opportunity to receive such aid from a hearing assistant and that he waived such right.  Dkt. No. 22-7.  Thus, Murray not deprived his due process right to receive the aid of a hearing assistant.

As the foregoing demonstrates, Murray received all process due to him under the Fourteenth Amendment of the Constitution.  Accordingly, it is recommended that defendant's motion on this ground be granted.

### C.  Qualified Immunity

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 F. App'x 146 (2d Cir. 2003).  However, even if the constitutional privileges

"are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)). A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.

Here, the second prong of the qualified immunity inquiry need not be addressed with respect to Murray's Fourteenth Amendment claim against the defendants because, as discussed, it has not been shown that defendants violated Murray's Fourteenth Amendment rights.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 22-14) be **GRANTED**; and it is

**ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation & Order in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen

(14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R.

72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C). **FAILURE TO OBJECT TO THIS REPORT**

**WITHIN FOURTEEN (14) DAYS WILL PRECLUDE REVIEW**. Roland v. Racette, 984

F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C.

§ 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

      **IT IS SO ORDERED** .

Dated: August 12, 2016
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge