UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**SIR JULES MURRAY,**

                            **Plaintiff,**

v.                                                                9:14-CV-1094 (BKS/CFH)

**ALBERT PRACK,** *Director of Special Housing/Inmate Disciplinary Programs* **and JOHN MILLER,** *Acting Captain; Clinton Correctional Facility*,

                            **Defendants.**
_____

**Appearances:**

**Sir Jules Murray**
10-R-2000
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541
Plaintiff, pro se

**Keith J. Starlin, Esq.**
Assistant Attorney General
New York State Attorney General's Office
The Capitol
Albany, NY 12224
Attorney for Defendants

**Hon. Brenda K. Sannes, U. S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

      Plaintiff pro se Sir Jules Murray brought this action against Defendants Albert Prack and John Miller under 42 U.S.C. § 1983 alleging that the Defendants violated his right to due process

1

under the Fourteenth Amendment while Plaintiff was confined at the Clinton Correctional Facility ("Clinton"). Dkt. No. 1. In the verified complaint Plaintiff alleged that he was found guilty of violating inmate rule 104.11, proscribing violent conduct, and inmate rule 104.12, proscribing leading or organizing, based upon his talk at a Nation of Islam religious service, which was tape recorded,[1] and during which he "did not advocate any violent or disorderly action which would be detrimental to the order of the prison." *Id.*, pp. 2-3. Plaintiff alleged that he filed an Article 78 Proceeding in New York State Supreme Court challenging the disciplinary determination, and that it was annulled. *Id.*, p. 6. Plaintiff cited to the March 14, 2013 decision by the New York State Appellate Division, Third Department ruling that the disciplinary determination was "not supported by substantial evidence." *Id.* (citing *In the Matter of Sir Jules Murray*, 104 A.D.3d 1007, 960 N.Y.S. 2d 562 (2013)).[2] In this action, Plaintiff seeks damages "as a result of the wrongful determination . . . and his subsequent confinement to the Special Housing Unit for five hundred and eighty seven (587) days." *Id.*, p. 1. Plaintiff alleges that Defendant John Miller was an Acting Captain at Clinton, and the hearing officer, and that Defendant Albert Prack denied Plaintiff's administrative appeal from the disciplinary determination. *Id.*, p. 2.

On October 30, 2015, the Defendants filed a motion for summary judgment arguing that the Plaintiff's complaint should be dismissed because he received all of the process he was due. Dkt. No. 22. Defendants served Plaintiff with a Notification of the Consequences of Failing to

---

[1] In a declaration submitted in support of the Defendants' motion for summary judgment, Defendant John Miller explained that the Nation of Islam meetings "are openly recorded on audiotape, the inmates know those meetings are taped, know they are being recorded when they speak at those meetings and know that prison authorities listen to those tapes after each meeting." Dkt. No. 22-5, ¶ 45.
[2] The Appellate Court directed that the determination be annulled, and that all references to it be expunged from Plaintiff's institutional record. 104 A.D.3d at 1009.

2

Respond to a Summary Judgment Motion, in accord with N.D.N.Y. Local Rule 56.2, informing Plaintiff, *inter alia*, that if he does not file a proper response to the motion, the Court "may grant the motion and dismiss some or all of your claims," and "may deem you to have conceded the defendant's arguments." Dkt. No. 22, p. 3. Although the docket indicated that Plaintiff was an inmate at Upstate Correction Facility, counsel for the Defendants discovered that he had been transferred to the Five Points Correction Facility, and served the summary judgment paperwork to him there.[3] Plaintiff never responded to the Defendants' motion for summary judgment.

This matter was referred to United States Magistrate Judge Christian F. Hummel who, on August 15, 2016, issued a Report-Recommendation and Order ("R & R") recommending that Defendants' motion for summary judgment be granted. Dkt. No. 24, p. 21.

In a letter dated September 1, 2016, and filed on September 6, 2016, Plaintiff objected to the Report-Recommendation. Dkt. No. 25.[4] For the reasons set forth below, the Report-Recommendation is adopted in its entirety.

---

[3] The docket was changed to reflect that Plaintiff is at Five Points Correction Facility after the Court received Plaintiff's September 1, 2016 letter from Five Points Correction Facility. Despite having been informed of his obligation to promptly notify the Court of any change of address, and having previously notified the Court about a change of address, (Dkt. No. 8; Dkt. No. 9, p. 5), Plaintiff never notified the Court regarding his transfer to Five Points Correctional Facility.

The Court Clerk also served Plaintiff with a Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, in accord with N.D.N.Y. Local Rule 56.2. Dkt. No. 23. The Clerk notified Plaintiff that his response was due by November 30, 2015. *Id.* That Notice, however, was mailed to Plaintiff at the address on the Court's docket, at Upstate Correctional Facility. *Id.*

[4] Objections to the Report-Recommendation were due by September 1, 2016. *See* Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(d). The Second Circuit has not ruled on whether the mailbox rule, which deems documents filed when they are given to prison officials for filing, applies to objections to a report and recommendation. *Garcia v. Graham*, No. 15 CV 1606-LTS-HBP, 2016 WL 1718389, at *1 n.1, 2016 U.S. Dist. LEXIS 57422, at *1 n.1 (S.D.N.Y. 2016). Given the Plaintiff's pro se status, the fact that the Report-Recommendation was sent to the Plaintiff at a different correctional facility than the one where he was confined, and the fact that it was post-marked only one day after the due date, the Court deems Plaintiff's objection to be timely filed.

## II. Standards of Review

### A. Report-Recommendation

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

### B. Summary Judgment

Summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *In re World Trade Center Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014). In ruling on a summary judgment motion, the court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). The question of whether evidence supporting a prison disciplinary decision affecting an inmate's liberty interest was sufficient to satisfy due process is a question of law for the Court. *Sira v. Morton*, 380 F.3d 57, 76 (2d Cir. 2004).

## III. Discussion

### A. Review of Plaintiff's Objections After He Failed to Respond to the Motion for Summary Judgment

Plaintiff has raised specific objections to the sufficiency of the evidence underlying the disciplinary determination and to the fairness and impartiality of the hearing officer. Dkt. No.

25.  Plaintiff, however, did not present these arguments to the Magistrate Judge; Plaintiff failed to file any response to the Defendants' summary judgment motion.  In this situation, it appears to be within the Court's discretion whether to even consider Plaintiff's objections.  *See*, *e.g.*, *Walker v. Stinson*, 205 F.3d 1327 (2d Cir. 2000) (noting that the district court did not abuse its discretion in refusing to consider qualified immunity defense that the defendants failed to raise before the magistrate judge); *cf. Stephens v. Tolbert*, 471 F.3d 1173 (11th Cir. 2006) (finding that district court had discretion to consider and accept an argument that had not been presented to the magistrate judge).

In this case, while Plaintiff did not raise these arguments before Magistrate Judge Hummel, Plaintiff's assertion that his speech was insufficient to support the disciplinary determination is at the heart of his due process claim.  It was alleged in his verified complaint and was thoroughly addressed by Magistrate Judge Hummel in the Report-Recommendation.  The Court also notes that the notice providing Plaintiff with the due date for his response to the motion for summary judgment was mailed to a correctional facility from which Plaintiff had been transferred.  Dkt. No. 23.  Although Plaintiff is responsible for his failure to apprise the Court of his change of address, and Plaintiff had ample time to respond to the October 30, 2015 motion for summary judgment before the issuance of the August 15, 2016 Report-Recommendation, in light of all of the circumstances in this case, the Court will consider Plaintiff's Objections.

### B.  There Was Some Reliable Evidence to Support the Disciplinary Determination.[5]

---

[5] The Court has only addressed Plaintiff's sufficiency argument because Plaintiff's other objection – that he had a due process right to a civilian hearing officer – is frivolous. *See Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) ("An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer. . . [h]owever, the independent hearing officer need not come from outside the prison.") (citing *Vitek v. Jones*, 445 U.S. 480, 496

Plaintiff argues that statements in his speech were taken "out of context;" that he never "suggest[ed] or impl[ied] any violence towards anyone;" and that he was "peacefully speaking on and trying to find a solution to the injustices taking place in the facility." Dkt. No. 25, pp. 1-2. Plaintiff also cites to the fact that he prevailed in his challenge in state court to have the determination expunged from his institutional record. Dkt. No. 25, p. 2.

The fact that there was insufficient evidence to support the disciplinary determination under New York State law does not mean that there was insufficient evidence to afford due process because the standard required by New York State law "is sterner" than the standard necessary to afford due process. *Sira*, 380 F.3d at 76 n.9. "New York law requires prison disciplinary rulings to be supported by sufficiently relevant and probative information to constitute substantial evidence." *Id.* (quoting *Foster v. Coughlin*, 76 N.Y.2d 964, 966, 563 N.Y.S.2d 728, 729, 565 N.E.2d 477 (1990) (internal quotation marks omitted)). Due process, on the other hand, is afforded if the determination is supported by "some reliable evidence." *Sira*, 380 F.3d at 76; *Luna v. Pico*, 356 F.3d 481, 486 (2d Cir. 2004). The Supreme Court established the "some evidence" standard in *Superintendent v. Hill*, 472 U.S. 445, 447 (1985), and the Second Circuit has held that "only 'reliable' evidence can constitute 'some evidence.'" *Sira*, 380 F.3d at 76.

"Judicial review of the 'some evidence' standard is narrowly focused." *Id.*. The Supreme Court has explained:

Ascertaining whether this standard is satisfied does not require examination of the entire

---

(1980).

> record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Superintendent v. Hill*, 472 U.S. at 447. The Supreme Court "declined to adopt a more stringent evidentiary standard," noting that "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Id.*, at 456. In *Superintendent v. Hill*, two inmates were disciplined for assault based upon evidence that a prison guard found another inmate "bleeding from the mouth and suffering from a swollen eye" on a walkway and two of the three inmates disciplined were jogging away together down the walkway. *Id.*, at 447-48. The two inmates asserted their innocence; the victim provided written statements that they did not cause his injuries; and there was "no direct evidence identifying any one of the three inmates as the assailant." *Id.*, at 457. Although the Supreme Court noted that this evidence "might be characterized as meager," the Court held that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.*, at 457; *cf. Zavaro v. Coughlin*, 970 F.2d 1148, 1152-53 (2d Cir. 1992) (holding that statements that "every inmate" participated in a riot, when at least 100 inmates were present in a large mess hall and the statements were made by guards assaulted during in the riot, are "so blatantly implausible when taken literally that they do not constitute even 'some evidence' of a particular inmate's guilt").

In this case, Plaintiff was convicted under disciplinary rule 104.11, which states that "[a]n inmate shall not engage in any violent conduct or conduct involving the threat of violence," and under disciplinary rule 104.12 which states that "[a]n inmate shall not lead, organize, participate, or urge other inmates to participate in a work-stoppage, sit-in, lock-in, or other actions which

7

may be detrimental to the order of facility." *See In the Matter of Sir Jules Murray*, 104 A.D.3d at 1008; 7 NYCRR 270.2[B][5][ii] and [iii].[6] In making the decision to discipline Plaintiff, Defendant Miller cited to the written report and to the audio recording as the evidence on which he relied. Dkt. No. 22-12, p. 2. The written report was prepared by Corrections Officer ("CO") Phaneuf after listening to the tape recording; CO Phaneuf detailed some of Plaintiff's comments and concluded that Plaintiff's speech was "a direct threat to safety and security of the facility." Dkt. No. 22-6. The tape recording of the speech was played at the hearing, at Plaintiff's request. Dkt. No. 22-10, at pp. 3, 12. Based on these violations, Defendant Miller sentenced Plaintiff to twenty-four months of Special Housing Unit ("SHU") and twelve months loss of good time. Dkt. No. 22-12, p. 1. He explained the reason for the disposition as "[t]o deter any behavior by this and other inmates that would encourage others to participate in activities detrimental to the safety and security of this facility and its staff." *Id.*

After reviewing this issue de novo, the Court concurs with Magistrate Judge Hummel's determination that the "some reliable evidence" standard has been met here. As a preliminary matter, Plaintiff acknowledged making the speech, which was recorded and played at the hearing. Dkt. No. 22-10, p. 12. With respect to the organizing violation (Rule 104.12), a certified transcript of the tape recording establishes that Plaintiff was urging inmates to take some action in response to wrongful beatings by corrections officers. Plaintiff has acknowledged telling the inmates that "a couple of the Muslim brothers had got assaulted during Ramadan and I felt that it was just because . . . we were on Ramadan and they see us gathering together." Dkt. No. 22-3, p. 21; *see* Dkt. No. 22-10, p. 12-13. During the speech he critically noted that no one

---

[6] Defendant Miller found Plaintiff not guilty of the conspiracy charge, under Rule 104.10.

had set up a "watch" beforehand. Dkt. No. 22-10, p. 12. Plaintiff told the inmates "you need to unite," and repeatedly asked the inmates what they were going to do. *Id.*, pp. 12-14.[7] While Plaintiff told them that they had to start "a paper trail," he also said "that's not good enough for our position." *Id.*, p. 14. Plaintiff told the inmates that they had to do something "now," and said that "they," apparently referring to prison officials, "don't attack that easy, with being a large group like this they not going to do nothing to us." *Id.* This constitutes some reliable evidence that Plaintiff was urging the inmates to participate in "actions which may be detrimental to the order of the facility." *See Nicholas v. Davis*, 74 F. App'x 131, 134 (2d Cir. 2003) (finding evidence that inmate was quoted telling newspaper inquiring into a possible inmate Y2K protest on January 1, 2000 that inmates had "very little avenues open for us to gain political power," and that inmate solicited and received information regarding the logistics of civil disobedience, when prison officials had credible cause to fear a Y2K inmate protest "sufficed—if barely—as some evidence" of violation of Rule 104.12).

Although the sufficiency of the evidence that Plaintiff engaged in "conduct involving the threat of violence" in violation of Rule 104.11 presents a closer question, the Court finds that the standard was met for that violation as well. The transcript indicates that after describing a wrongful beating of a fellow Muslim, Plaintiff told the inmates that this could happen if they just "look at [a prison official] wrong." Dkt. No. 22-10, p. 12. Plaintiff asked them what they would

---

[7] Defendant John Miller stated that in his experience, having worked for decades inside Clinton, inmates know that the meetings are recorded and "speak in code works and/or imply things/actions instead of directly saying them when they are trying to say or do something they know would violate DOCCS Inmate Rules. Asking loaded rhetorical questions is one method of doing that." Dkt. No. 22-5, pp. 11-12. Defendant Miller further explained that "pressing security concerns" require "prison authorities to promptly intervene in potentially dangerous situations before violence escalates, or even starts (if possible) and to counter potential threats posed by inmates to order within and/or control of the facility." *Id.* at p. 12. The Court notes that judicial restraint in "federal courts' review of prison policy and administration" is heightened with respect to the issue of "maintaining prison security and protecting against increased inmate violence." *Duamutef v. Hollins*, 297 F.3d 108, 112 (2d Cir. 2002).

9

do if officials "come along and kill me," and asked whether it would "take one of them killing us for us to do something?" *Id.*, p. 13. Plaintiff said "we not going to be at all if we keep letting this happen," and questioned why it is that they would "do something way faster," if "somebody slapped" the kufi off of Louis Farrakhan, than if "they beat up my homie." Dkt. No. 22-10, p. 13. Plaintiff noted that it could be "me next," and noted that he would be "here for thirteen years for beating up the C.O.s in county." *Id.*, p. 14. Plaintiff said "that [apparently referring to his conviction] can be their excuse," presumably referring to a justification for beating him up. *Id.* The combined effect of Plaintiff's exhortations to do something "now," in response to the beatings of fellow Muslims; that creating a paper trail is "not good enough," that officers "don't attack that easy, with being a large group like this," but they have "the upper hand," and are "going to do something," when coupled with a reference to his conviction for beating up corrections officers, is some evidence of "conduct involving the threat of violence." Thus, the record is not "so devoid of evidence" that Defendant Miller's findings were "without support or otherwise arbitrary." *Superintendent v. Hill*, 472 U.S. at 457.

The Court has reviewed for clear error the remaining portions of the Report-Recommendation to which Plaintiff has not objected, and found none.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation (Dkt. No. 24) is **ADOPTED** in all respects; and it is further

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

 **IT IS SO ORDERED.**

Dated: September 26, 2016

Brenda K. Sannes
U.S. District Judge